[No. B072243. Second Dist., Div. Two. Feb. 14, 1995.]

MARY BRESNAHAN, Plaintiff and Appellant, v.
CHRYSLER CORPORATION et al., Defendants and Respondents.

COUNSEL

Mukesh Advani, Grayson, Grayson & Mansell and Robert Mansell for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Sidney K. Kanazawa, Sabina A. Helton, Hogan & Hartson and Terri A. Steinhaus for Defendants and Respondents.

OPINION

**FUKUTO, J.**—In this product liability case, the court granted a nonsuit after plaintiff's opening statement, even though it was conceded that plaintiff had stated a prima facie case under the "risk-benefit" theory of *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1] (*Barker*). The court did so in order to enable appellate review of its *in limine* ruling that plaintiff would be confined to that theory, and not be allowed to present her case under the alternative *Barker* test of "consumer expectations." We reverse the nonsuit, and direct that plaintiff be allowed to proceed using the consumer expectations test.

I.

Plaintiff Mary Bresnahan brought this action against defendants Chrysler Corporation and Barish Chrysler (collectively Chrysler) for personal injuries she suffered on June 3, 1990. As summarized in plaintiff's opening statement, on that date plaintiff, driving her 1988 Chrysler LeBaron, "rear-ended" another car at low speed. When the collision occurred, the LeBaron's passive restraint air bag inflated, forcing plaintiff's left arm and hand upward. Her hand struck the LeBaron's overarching windshield, cracking it, and her elbow apparently impacted the windshield's side pillar. Plaintiff suffered a fractured elbow, requiring extensive treatment. The occupant of the other car was uninjured.

Plaintiff contended her injuries were caused by a design defect in the LeBaron, involving the operation of the air bag in conjunction with the placement of the windshield. Plaintiff sought to prove that the car was defective under the "consumer expectations" test of design defect, articulated in *Barker, supra*, 20 Cal.3d 413. Under that test, "a product may be found defective in design if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (*Id.* at pp. 429, 432; accord, *id.* at p. 435; see BAJI No. 9.00.5 (7th ed. 1994 pocket pt.).)

*Barker, supra*, 20 Cal.3d 413, also provided an alternative (*id.* at pp. 432, 435) test of defective design, known as the "risk-benefit" test. Under this test, "a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design."[1] (*Id.* at p. 432.) The risk-benefit test contemplates that "a product may be found defective in design, even if it satisfies ordinary consumer expectations, if through hindsight the jury determines that the product's design embodies 'excessive preventable danger' . . . ." (*Id.* at p. 430.)

Before trial, plaintiff moved to exclude, as irrelevant and under Evidence Code section 352, evidence regarding the risk-benefit factors germane under that test. Plaintiff avowed she wished to proceed under the consumer expectations test alone. She accordingly urged that the jury should be instructed only under that phase of BAJI No. 9.00.5, and that Chrysler's proposed expert evidence about the risks and benefits of air bags would be collateral and irrelevant.

Contemporaneously, Chrysler moved that the jury be instructed only on the risk-benefit test, and not on the consumer expectations test. Chrysler contended that the passive restraint air bag was a new product and technology, with whose dynamic operation—including instantaneous deployment—ordinary consumers were not familiar, and the acceptability of which they could not decide without understanding its relative risks and benefits. The court denied plaintiff's motion and granted Chrysler's, ruling that risk-benefit evidence should be considered, and that the jury would not be instructed under the consumer expectation test.

---

[1]The referenced "relevant factors" include "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." (20 Cal.3d at p. 431.) )

Stating that "we are not proceeding on risk/benefit," plaintiff's counsel proceeded to make an opening statement to the court, waiving a jury solely for consideration of Chrysler's motion for nonsuit. The opening statement described the accident as noted above, and averred that plaintiff would show that the cause of her injuries was a defect in the car, involving the air bag and the placement of the windshield, to be illustrated by testimonial and physical evidence. Counsel concluded that he would establish "that the ordinary consumer would not expect this touted safety device to cause this type of injury."

Chrysler then moved for a nonsuit. Chrysler's counsel acknowledged that plaintiff's proposed showing of causation would probably be sufficient to state a prima facie case of liability under the risk-benefit test, which places the burden of proof regarding defectiveness on the defendant. However, Chrysler urged, because plaintiff was unprepared (or unwilling) to offer any proof of defectiveness under that test, the ultimate judgment would be for Chrysler.[2]

The court observed that Chrysler had conceded that plaintiff had stated a prima facie case, and the court perceived a nonsuit might not be appropriate. However, the court added, "What, plainly, all sides intend is an appellate review of this court's decision concerning the motions in limine." The court then ruled: "In light of all of the evidence in the case and in the assumption that the opening statement in effect makes out an attempted case in chief based on the consumer expectation test and not on the risk/benefit test, and based upon all of what we expect to be the evidence in this case, I am going to grant the motion for nonsuit." The court added its request that the reviewing court give guidance on the issues decided under the motions *in limine*, even if it viewed the nonsuit as inappropriate for other reasons.

## II.

The nonsuit was improper. ■ A nonsuit may not be granted unless, accepting as true both the evidence favorable to the plaintiff and every legitimate inference that may be drawn from it, that evidence is yet insufficient to support a verdict for the plaintiff. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036] (*Campbell*).) When the motion is made following the opening statement, the trial and reviewing courts must "assume plaintiff can

---

[2]Counsel stated: "I guess I move for a nonsuit, but because of the existing law, I'm not sure that it can be granted unless you assume that there will be no evidence under this benefit issue."

prove all the favorable facts alleged. . . . A nonsuit on the opening statement is proper only when the court concludes that there will be no evidence which would support a judgment in favor of the plaintiff." (*Loral Corp.* v. *Moyes* (1985) 174 Cal.App.3d 268, 272 [219 Cal.Rptr. 836].)

 Plaintiff made her opening statement after the trial court had ruled that only the risk-benefit test would apply to her case. Under the risk-benefit test, the plaintiff's burden is to "prov[e] that the product's design proximately caused his injury . . . ." (*Barker, supra,* 20 Cal.3d at p. 435.) The defendant then bears the burden of proving "that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design." (*Ibid.*) This allocation of burdens reflects and responds to both the traditional purposes of the strict product liability doctrine and the presumptive balance of the parties' knowledge of the often technical factors that make up the risk-benefit equation. (*Id.* at p. 431.) The Supreme Court has recently reaffirmed these burdens of proof and their rationale, while rejecting an invitation to reverse them. (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 571, fn. 8 [34 Cal.Rptr.2d 607, 882 P.2d 298] (*Soule*).)

Accordingly, as stated in a leading decision involving a nonsuit in a design defect case, "Under the second prong of *Barker* [risk-benefit], the plaintiff must establish a prima facie case of causation. . . . Therefore, in this case, if plaintiff's evidence was sufficient to establish a causative link between the design of the [vehicle] and the injury she sustained, the trial court erred in granting the motion for nonsuit." (*Campbell, supra,* 32 Cal.3d at p. 119, fns. omitted.)

 The evidence advanced in plaintiff's opening statement was sufficient to avoid a nonsuit under the foregoing principles. Plaintiff offered to prove that her injuries resulted from impact of her arm with the windshield and its peripheral pillar. That impact, in turn, derived from the design of the LeBaron, incorporating a driver's air bag and a low, sloping windshield that overarched the steering wheel. Plaintiff's automotive engineering expert would have testified that the injuries would not have occurred had the air bag not deployed.

The foregoing showing of causation met plaintiff's prima facie burden under the risk-benefit test. That plaintiff's counsel further avowed that he did not intend to present evidence of the balance of risks and benefits inherent in the LeBaron's design was of no consequence: such proof was not part of plaintiff's burden but rather was Chrysler's. And Chrysler's anticipation that its risk-benefit evidence would stand unrebutted did not justify a

nonsuit, for several reasons. First, only the sufficiency of plaintiff's evidence was at issue. (See Code Civ. Proc., § 581c.) Indeed, Chrysler's intended evidence was unknown to the trial court. And even if ultimately unrebutted, that evidence carried no guarantee of persuading the jury on the risk-benefit issue on which Chrysler had the burden of proof.

Thus, even on the premise that only the risk-benefit test would be presented to the jury, the evidence adduced on plaintiff's opening statement satisfied her burden under that theory, and the judgment of nonsuit was improper.

### III.

As the case must be returned for trial, we consider the court's ruling that the trial should proceed, and the jury should be instructed, under only the risk-benefit test, not the consumer expectations test. On the record presented, that ruling also was erroneous.

To recapitulate, under the consumer expectations test "a product may be found defective in design if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (*Barker, supra,* 20 Cal. 3d at pp. 429, 432; accord, BAJI No. 9.00.5; cf. Cal. U. Com. Code, § 2314, subd. (2)(c) [implied warranty of fitness].)

In urging and concluding that this basic test of product defect should not apply in this case, Chrysler and the trial court drew upon a portion of *Barker, supra,* 20 Cal.3d 413 that indicated a limit to the consumer expectations test. Concluding its explication of that test and commencing that of the risk-benefit test, the *Barker* court stated: "As Professor Wade has pointed out, however, the expectations of the ordinary consumer cannot be viewed as the exclusive yardstick for evaluating design defectiveness because '[i]n many situations . . . the consumer would not know what to expect, because he would have no idea how safe the product could be made.' (Wade, *On the Nature of Strict Tort Liability for Products, supra,* 44 Miss.L.J. 825, 829.)" (*Id.* at p. 430.) In an argument that the trial court ultimately accepted, Chrysler contended that the consumer expectations test was therefore unsuited and inapplicable to this case, because the alleged product defect involved the inclusion and operation of the air bag, a "new technology" with which consumers were unfamiliar and inexperienced, and hence unable to form informed expectations of safety.

In evaluating this contention, we draw guidance from the Supreme Court's recent decision in *Soule, supra,* 8 Cal.4th 548, which reviewed the criteria

for invocation or exclusion of the consumer expectations test. *Soule* held that it had been error (albeit harmless) to instruct on that test in a case in which a motorist had received ankle injuries when her car's left front wheel collapsed into the floorboard during a collision. Plaintiff claimed design defects in the car's frame and the bracket attaching the wheel assembly to it. The manufacturer disputed these claims, and contended that the force of the collision, together with plaintiff's negligence in not wearing a seat belt, had caused her injuries.

Reviewing the common law history of California's consumer expectations test, the court took note of *Barker*'s observation that " '[i]n many situations . . . the consumer would not know what to expect, because he would have no idea how safe the product could be made.' " (*Barker, supra,* 20 Cal.3d at p. 430; *ante,* p. 1566.) In relation to automobiles, the court observed that although ordinary consumers may legitimately form many safety expectations of their cars, providing standards for defectiveness (*Soule, supra,* 8 Cal.4th at p. 566, fn. 3), ". . . the ordinary consumer of an automobile [also] simply has 'no idea' how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." (*Id.* at p. 567.)

However, the court rejected the manufacturer's contention "that the consumer expectations test is improper whenever 'crashworthiness,' a complex product, or technical questions of causation are at issue." (*Soule, supra,* 8 Cal.4th at p. 568.)[3] "Because the variety of potential product injuries is infinite," the court stated, "the line cannot be drawn as clearly as GM proposes. But the fundamental distinction is not impossible to define. The crucial question in each individual case is whether the circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers." (*Id.* at pp. 568-569, fn. omitted.) The court added, "We simply hold that the consumer expectations test is appropriate only when the jury, fully apprised of the circumstances of the accident or injury, may conclude that the product's design failed to perform as safely as its ordinary consumers would expect." (*Id.* at p. 569, fn. 6.)

The court proceeded to hold that the consumer expectations test had not been suitable for the case at hand, because the plaintiff's theory of design defect "was one of technical and mechanical detail" (*Soule, supra,* 8 Cal.4th at p. 570), and the speed, angle and point of impact of the collision were in

---

[3]The court also rejected more sweeping contentions, that the consumer expectations test should be abolished, and that the burdens of proof for the risk-benefit test (see *ante,* p. 1565) should be realigned. (8 Cal.4th at pp. 569-570, 571, fn. 8.)

dispute. On these facts, the court concluded, "ordinary experience and understanding [would not] inform such [an ordinary] consumer how safely an automobile's design should perform under the esoteric circumstances of the collision at issue here." (*Ibid.*)

 Applying the teachings of *Soule, supra,* 8 Cal.4th 548 and its antecedents, we do not believe that the record presented by Chrysler justified exclusion of the consumer expectations test from this case. Plaintiff proposed to prove that under the foreseeable circumstances of the accident (see *id.* at p. 560), her vehicle's design, specifically the air bag feature in conjunction with the placement of the windshield, performed in a manner below the safety expectations of an ordinary consumer, when it forced plaintiff's arm into a series of injurious "internal" collisions with the interior of the car (the same nature of impacts the air bag was intended to avert). We believe that, on the showing before us, an ordinary consumer would be capable of forming an expectation, one way or the other, about whether the design of the highly publicized and by now commonplace product of an air-bag-equipped automobile satisfied minimal safety expectations in causing that result (assuming that it was the cause). Plaintiff's theory here does not pose the consumer unawareness that attended the design defect claim in *Soule.* In contrast to *Soule*'s complex and murky situation regarding the crashworthiness of wheel brackets and frames, ordinary experience may well advise a consumer what measure of safety to expect from her car's side windshield assembly and air bag in a minor rear-end collision.

Chrysler poses a number of contrary considerations that are not dispositive. First, the fact that relatively few consumers may have experienced the deployment of an air bag is not disabling. The same point could be made in any case where a product performed in an unusual manner, or where safety equipment was triggered. What is germane is whether the "everyday experience" of the consumer permits him or her to entertain minimum safety expectations, of the product's performance under foreseeable circumstances. (*Soule, supra,* 8 Cal.4th at p. 567.) We believe that an ordinary consumer is so equipped to form expectations of the safety of a car with an air bag in a minor rear-end collision.

Nor does the alleged technical novelty of the air bag preclude resort to consumer expectations. The consumer expectations test is not foreclosed simply because expert testimony may be necessary to explain the nature of the alleged defect or the mechanism of the product's failure. (*Soule, supra,* 8 Cal.4th at p. 569, fn. 6.) As observed in *West v. Johnson & Johnson Products, Inc.* (1985) 174 Cal.App.3d 831, 866-867 [220 Cal.Rptr. 437] (*West*), whether a product's design and performance met the informed

expectations of the ordinary consumer is a question distinct from, even if derivative of, the factual issues of what that design was and how it functioned.

Finally, Chrysler cannot disqualify the consumer expectations test on the basis of asserted governmental conclusions that the benefits of air bags in high-speed collisions outweigh and justify the risk of injuries such as occurred here. Risk-benefit weighing is not a formal part of, nor may it serve as a "defense" to, the consumer expectations test. (*Soule, supra,* 8 Cal.4th at p. 566.) Chrysler's implicit suggestion that the favorableness to it of the risk-benefit test requires its use begs the question.[4]

On the record presented, the trial court erred in precluding plaintiff from proceeding under the consumer expectations test. Conceivably, further evidentiary development might yet call for declining to instruct on that test; but we must consider Chrysler's motion *in limine* as presented.

Plaintiff has reciprocally requested, below and again here, that the risk-benefit test, and evidence bearing on it, be excluded from the case. On this question, competing factors dictate a cautious ruling. On the one hand, plaintiff is entitled to select which theory she will pursue. (See *Campbell, supra,* 32 Cal.3d at p. 126; *West, supra,* 174 Cal.App.3d at p. 854.) Moreover, the trial court was incorrect in opining that risk-benefit analysis may properly inform proof of what the ordinary consumer would expect. (*Soule, supra,* 8 Cal.4th at p. 566.) However, certain facts about the risks and benefits of a product's design and operation may constitute evidence of "the objective features of the product which are relevant to an evaluation of its safety" under the consumer expectations test. (*Campbell, supra,* 32 Cal.3d at p. 127.) Indeed, plaintiff's counsel suggested below that he might offer such evidence for that purpose.

Accordingly, we do not categorically foreclose introduction of evidence regarding risks and benefits, nor even the use of the risk-benefit test should plaintiff choose to pursue it. What evidence will be relevant and admissible will depend upon the course of the trial. However, we agree with plaintiff

---

[4]Throughout these proceedings, Chrysler has suggested that injuries such as plaintiff sustained are a predictable, even inevitable consequence of the air bag's operation. Even assuming this is so, it does not compel use of the risk-benefit test rather than the consumer expectations test. Under the latter, Chrysler (as well as plaintiff) will be able to adduce evidence of how the air bag operates, including its incidental effects, in a collision such as plaintiff's. So informed of its inherent features, the jury then will be called upon to decide whether "the product's design failed to perform as safely as its ordinary consumers would expect." (*Id.* at p. 569, fn. 6.)

that Chrysler may not adduce risk-benefit analysis as a counterweight or "defense" to proof under the consumer expectations test. (Accord, *Soule*, *supra*, 8 Cal.4th at p. 566.)

## IV.

The judgment is reversed. Plaintiff shall recover costs.

Gates, Acting P. J., and Nott, J., concurred

A petition for a rehearing was denied March 6, 1995, and respondents' petition for review by the Supreme Court was denied May 11, 1995.