[No. D026878. Fourth Dist., Div. One. Jan. 6, 1999.]

STEPHANIE A. GALANEK, Plaintiff and Appellant, v.
STEPHEN D. WISMAR et al., Defendants and Respondents.

1418

**COUNSEL**

Jeffrey M. Brown; Rake & Catanese and M. E. Rake, Jr., for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, James E. Friedhofer, Douglas R. Reynolds, James J. Wallace II and Christine G. Thoene for Defendants and Respondents.

**OPINION**

**HOWATT, J.**[*]—Plaintiff Stephanie A. Galanek (Galanek) appeals an order granting defendants' motion for nonsuit after her opening statement at trial.[1] Galanek sued attorney Stephen D. Wismar (Wismar) and the law firm of Jones, Wismar & Ball for legal malpractice based on Wismar's alleged negligent spoliation of evidence in the course of his representation of Galanek in her underlying automobile accident/personal injury case. Galanek's complaint alleges Wismar's failure to take reasonable steps to prevent the destruction of her vehicle caused her to lose a meritorious products liability case against Honda Motor Company, Ltd., and related defendants (collectively Honda).[2] On appeal Galanek contends (1) she presented viable claims for legal malpractice and negligent spoliation of evidence in her opening statement; and (2) she is not required to prove her underlying case to prevail because her malpractice claim is based on Wismar's spoliation of evidence.

On October 1, 1998, we filed a published opinion reversing the order granting nonsuit. Wismar filed a petition for rehearing contending, inter alia, that he failed to receive notice of the opportunity to request oral argument before the opinion was filed. We granted the petition for that reason. On rehearing we adhere to our original disposition reversing the order granting nonsuit.

---

[*]Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]An order granting a nonsuit made during a jury trial is appealable. (*Brawthen* v. *H & R Block, Inc.* (1972) 28 Cal.App.3d 131, 132 [104 Cal.Rptr. 486].)

[2]Galanek named Honda Motor Company, Ltd.; Honda of America Manufacturing, Inc.; American Honda Motors, Inc. — Acura Division; and Hoehn Motors, Inc., as the manufacturers and suppliers of her vehicle.

## Factual and Procedural Background

### *The Underlying Action*

In her complaint in the underlying action, Galanek alleged she was at a complete stop in her Acura Integra when she was struck from behind by another automobile. She further alleged her injuries were the result of a defect in her vehicle which caused the driver's seat to collapse upon impact. She asserted a cause of action for negligence against the driver of the other vehicle and causes of action for strict products liability, negligence, and breach of warranty against Honda.

After Galanek replaced Wismar with other counsel, Honda moved for summary judgment on the ground Galanek could not prove her vehicle was defective because it was sold to a third party and destroyed without having been adequately inspected. In opposition to the motion, Galanek presented the declaration of her designated expert, an accident reconstructionist, who stated that a comparison of an exemplar vehicle with photographs taken of Galanek's car after the accident would be sufficient to prove the alleged defect. Galanek also argued that Honda was informed of her products liability claim and had an opportunity to inspect the vehicle before it was destroyed, but had not done so.

The court granted Honda's motion for summary judgment on the ground Galanek failed to meet her burden of showing the existence of a triable issue of fact as to whether her vehicle was defective. The court ruled the declaration of Galanek's expert was insufficient to defeat summary judgment because it showed only the possibility that a triable issue of fact might be shown in the future, based upon procedures and analysis not yet performed by the expert.

Rather than appealing the summary judgment, Galanek filed the instant action against Wismar. Her complaint contains a single cause of action for professional negligence based on Wismar's failure to take reasonable steps to prevent the destruction of her vehicle.[3]

### *Facts According to Galanek's Opening Statement in the Instant Action*

In deciding whether a nonsuit on the opening statement is proper, the trial court and reviewing court must assume the plaintiff can prove all the favorable facts presented in the opening statement. (*Bresnahan* v. *Chrysler Corp.* (1995) 32 Cal.App.4th 1559, 1564-1565 [38 Cal.Rptr.2d 446].)

---

[3]Galanek's complaint does not contain a separately pleaded cause of action for negligent spoliation of evidence.

Galanek's opening statement included the following facts, as presented by counsel: Galanek found herself in the backseat of her car after it was struck by the other vehicle because the seat in which she had been sitting instantly collapsed upon impact. The primary injury she suffered in the accident was a brain injury known as "contrecoup," which occurs when the brain bounces off the back and front of the skull as a result of the head being suddenly thrown backward and then rebounding forward. The United States government declared Galanek to be totally disabled due to her brain injury. Galanek was a nurse and had spent her nursing career working in critical care and intensive care units. She had planned, prior to the accident, to make a career change and transfer to the labor and delivery rooms, something she had wanted to do since her time as a "candy striper." Her professional life was that of a caregiver and she will never be able to return to that profession due to the injuries she suffered in the accident.

Wismar was the second attorney to handle Galanek's personal injury action. Galanek discharged the first attorneys she retained because she did not think they were competent to handle the case. Galanek retained Wismar on September 29, 1992, over six months after the accident. Galanek was favorably impressed by Wismar, who represented himself to be an experienced trial attorney. Wismar had been an attorney for over 10 years when Galanek retained him, but he had never tried a case, nor had he represented a plaintiff as seriously injured as Galanek in a products liability case.

Wismar soon recognized that, in addition to a negligence claim against the driver of the other car, Galanek had a potential products liability claim against Honda based on the theory that the failure of her car seat was a cause of her contrecoup injury. Wismar did little work on Galanek's case between the time she retained him and February 1993. He filed her complaint on March 11, 1993, the day before the statute of limitations ran on her personal injury claims.

Attorneys refer to products liability cases like Galanek's as "seating system failure" cases. Wismar failed to avail himself of a vast amount of information and educational material which would have informed him that the defective vehicle must be preserved for a plaintiff to succeed in such a case. However, he obtained that information from an experienced products liability attorney whom he consulted before he filed Galanek's complaint.

On March 11, 1993, the same day he filed the complaint, Wismar sent Honda written notice that Galanek's vehicle had been sold at auction to a third party and, therefore, Honda should inspect it forthwith. However, Wismar did not send an engineer out to perform the kind of inspection a seat failure case requires.

In April 1993 Wismar wrote a letter to the people holding the vehicle, advising them the vehicle was critical evidence in Galanek's personal injury case. Wismar stated: "The purpose of this letter is to place you on notice that any demolition, sale or removal [of the vehicle] could result in you, in essence, being sued." The storage facility where the vehicle was located gave Wismar permission to inspect the vehicle and to take it from the facility if he wanted to. Wismar did not take possession of the vehicle. Instead, he and his accident reconstruction expert went to the storage facility where the expert took photographs and measurements of the vehicle.

In May 1993 Wismar learned from the storage facility that the vehicle had been destroyed. Honda's motion for summary judgment in the underlying action was successful because the vehicle was no longer in existence.

### The Nonsuit

In a discussion between counsel and the court outside the presence of the jury and before Galanek's counsel made his opening statement, Galanek's counsel stated he could not prove Galanek would have prevailed in her products liability case against Honda if her vehicle had been preserved because he could not prove the seat was defective without the vehicle.[4] However, Galanek's counsel stated he could provide an experienced products liability attorney to testify that Galanek's action against Honda is the kind of case where products liability attorneys prevail when they have the product.

After the opening statement, Wismar moved for nonsuit on the grounds Galanek's counsel (1) failed to refer to any evidence that any act or failure to act by Wismar caused Galanek to be unable to prove her case against Honda, and (2) failed to offer any proof that her injuries were caused or enhanced by the allegedly defective seat in her vehicle. The court granted Wismar's motion for nonsuit on the grounds Galanek (1) lacked expert evidence that a failure of the car seat was a cause of her head injury, and (2) lacked scientific evidence that the car was necessary to prove the alleged defect in the car seat.[5]

---

[4]Galanek's counsel erroneously believed this statement to be consistent with the ruling on Honda's summary judgment motion in the underlying action. The summary judgment ruling did not state Galanek could not prove a defect without the car, but only that her expert's declaration in opposition to the motion failed to raise a triable issue of fact as to the existence of a defect because the expert merely described procedures for showing a defect without the car; he did not state he had performed those procedures and concluded there was a defect.

[5]The court's second ground for granting nonsuit is essentially responsive to the first ground articulated by Wismar. By concluding Galanek could not show her vehicle was necessary to

## Discussion

██ "The standard of review for a nonsuit after [the] conclusion of the opening statement is well settled. Both the trial court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference which may be drawn from those facts. [Citations.] A nonsuit at this early stage of the proceedings is disfavored. [Citation.] It can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action or has inadvertently established uncontrovertible proof of an affirmative defense. [Citations.]" (*Abeyta* v. *Superior Court* (1993) 17 Cal.App.4th 1037, 1041 [21 Cal.Rptr.2d 680].)

Courts have traditionally taken a restrictive view of the circumstances under which a nonsuit at the close of an opening statement is appropriate because nonsuit at that point effectively takes the case away from the jury on a procedural device. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) Indeed, granting a nonsuit at the close of an opening statement is particularly dangerous because counsel rarely present such an explicit, full, and un-abridged version of the plaintiff's case that the court can be sufficiently confident of the impossibility of proof of a cause of action to abruptly terminate the litigation. (*Weyburn* v. *California Kamloops, Inc.* (1962) 200 Cal.App.2d 239, 244 [19 Cal.Rptr. 357].) In *Gallegos* v. *Union-Tribune Publishing Co.* (1961) 195 Cal.App.2d 791, 796 [16 Cal.Rptr. 185], this court long ago cautioned against the precipitous grant of a nonsuit upon the conclusion of an opening statement, as the law favors trial on the merits. Simply stated, the grant of a nonsuit on an opening statement is clearly disfavored and should be avoided unless there is a clear and unequivocal demonstration of a total lack of a cause of action by plaintiff. (*Kaukonen* v. *Aro* (1956) 142 Cal.App.2d 502, 504 [298 P.2d 611].)

██ " ' "The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]" ' [Citations.] Thus,

---

prove the driver's seat was defective, the court essentially concluded she could not show that any act on the part of Wismar (i.e., failure to preserve the car) caused Galanek to be unable to prove her case against Honda.

'. . . an attorney is liable for malpractice when his negligent . . . conduct of the client's affairs results in loss of the client's meritorious claim.' [Citation.]" (*Thomas* v. *Lusk* (1994) 27 Cal.App.4th 1709, 1716 [34 Cal.Rptr.2d 265].) Proof that the client would have prevailed on the underlying action generally requires trial of a "suit within a suit," i.e., a determination of the merits of the underlying action in the malpractice trial. (See *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 307-308 [250 Cal.Rptr. 116, 758 P.2d 58].)

■ For Galanek to prevail in her malpractice action, she had to establish that Wismar's undeniable negligence in failing to preserve her car caused her to lose a meritorious case against Honda. To prove her case against Honda, Galanek had to prove her injuries were caused in part by a defect in her car. Clearly, Galanek's opening statement alleged facts which, if proved, would establish that her car was destroyed as a result of Wismar's negligence. The opening statement also included sufficient facts to establish Galanek's "case within the case" against Honda. Galanek's counsel asserted the car was defective and the defect was a cause of Galanek's head injury.[6] He stated the unavailability of the car resulted in the loss of Galanek's case against Honda. Accepting these facts as true, we conclude sufficient facts were stated in the opening statement to avoid nonsuit.

In granting the nonsuit, the court ruled Galanek had no case against Wismar because she lacked proof that Wismar's negligence caused her to lose a meritorious action against Honda. We conclude the court erred in basing the nonsuit on Galanek's inability to prove causation because Galanek asserted sufficient facts in her opening statement to shift the burden of proof on causation to Wismar, as we will explain.

Evidence Code section 500 provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

■ In *McGee* v. *Cessna Aircraft Co.* (1983) 139 Cal.App.3d 179, 187 [188 Cal.Rptr. 542], this court noted: "The Law Revision Commission

---

[6]Galanek's counsel stated: "When [the] accident happens, [Galanek] finds herself kind of in the backseat of the car, because what happened was the seat that she was in at the time of the accident, it just collapsed immediately. It just went bang, just like that." Later in the opening statement, Galanek's counsel stated: "[Wismar] also realized . . . that there might be . . . . a cause of action called 'products liability,' and that was the cause of action that he was going to take against Honda because the seat had failed. And it was that seat that had failed which caused or was a cause of this contrecoup phenomenon, where her brain hit the back of her skull and then hit the front of the skull and caused this diffuse brain damage."

comment to California Evidence Code section 500 states: 'In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.' " (See also *Thomas* v. *Lusk, supra,* 27 Cal.App.4th at p. 1717.)

"In negligence and products liability cases, the doctrine has evolved that the burden of proof on the issue of causation may be shifted to the defendant where demanded by public policy considerations. [Citation.] '[T]he shift in the burden of proof . . . may be said to rest on a policy judgment that when there is a substantial probability that a defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove "proximate causation" conclusively, it is more appropriate to hold the defendant liable than to deny an innocent plaintiff recovery, unless the defendant can prove that his negligence was *not* a cause of the injury.' [Citations.]" (*Thomas* v. *Lusk, supra,* 27 Cal.App.4th at p. 1717, quoting *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 774, fn. 19 [91 Cal.Rptr. 745, 478 P.2d 465], italics in *Haft.*)[7]

 Applying these principles, we conclude the facts asserted in Galanek's opening statement, if proved, would warrant a shifting of the burden of proof to Wismar to establish that his negligence did not cause Galanek to lose a meritorious products liability claim against Honda. Galanek asserted Wismar's negligence in failing to preserve her car made it impossible for her to prove her case against Honda. If Galanek cannot prove her underlying case against Honda, it follows that she cannot conclusively prove "proximate causation" in the instant malpractice action against Wismar. Because Wismar's negligence in failing to preserve the car is what made it impossible for Galanek to prove causation, as a matter of public policy it as more appropriate to hold Wismar liable than to deny Galanek recovery, unless Wismar can prove his negligence did not damage Galanek. (*Haft* v. *Lone Palm Hotel, supra,* 3 Cal.3d at p. 774, fn. 19.)

The factors noted in *McGee* v. *Cessna Aircraft Co., supra,* 139 Cal.App.3d 179, further support shifting the burden of proof to Wismar. The car

---

[7]In *Thomas* v. *Lusk, supra,* 27 Cal.App.4th 1709, the court considered whether the burden of proof of causation should be shifted to the defendant attorney in a legal malpractice action based on the attorney's negligent failure to preserve evidence critical to the plaintiff's underlying products liability case. (*Id.* at pp. 1717-1718.) Although *Lusk* concluded a shifting of the burden of proof was not warranted under the facts presented in that case, it stated it "would not entirely foreclose shifting the burden of proof of causation in actions for legal malpractice . . . ." (*Id.* at p. 1718.)

remained available to Wismar long after he recognized its critical importance to the litigation. As Galanek's attorney, Wismar was "primarily responsible during the course of the litigation for the preservation of evidence." (*Thomas* v. *Lusk, supra,* 27 Cal.App.4th at p. 1718.) As we discussed above, in the absence of proof that the car was defective, the most desirable result in terms of public policy is to hold Wismar liable rather than deny recovery to Galanek, unless Wismar can prove his negligence did *not* cause Galanek to lose a meritorious action.

As a general rule, a plaintiff must establish a "prima facie" case or "substantial probability" of causation as a condition precedent to a shift in the burden of proof. (*Thomas* v. *Lusk, supra,* 27 Cal.App.4th at p. 1719.) This requirement is particularly applicable in strict products liability cases where the burden shifts to the defendant to show a product is not defective upon the plaintiff's prima facie showing that his or her injury was caused by the product's design. (See, e.g., *McGee* v. *Cessna Aircraft Co., supra,* 139 Cal.App.3d at pp. 187-188.) The requirement necessarily applies with less force in cases like the present case where the plaintiff's ability to make even a prima facie case of causation is frustrated by the loss of critical evidence as a result of the defendant's negligence. In any event, Galanek stated a prima facie case of causation in her opening statement. She asserted she found herself in the backseat of her car after it was struck by the other vehicle because her car seat collapsed instantly upon impact; she alleged the seat was defective; and she recounted Wismar's negligence in failing to preserve the car. The facts alleged in Galanek's opening statement establish a prima facie case or substantial probability of causation sufficient to shift the burden of proof to Wismar.[8]

The burden-shifting issue in the present case is analogous to that in *Haft* v. *Lone Palm Hotel, supra,* 3 Cal.3d 756. In *Haft* a father and his son drowned in the swimming pool of a motel where they were guests. The motel had failed to provide a lifeguard as required by statute. The California Supreme Court noted the absence of a lifeguard "not only stripped decedents of a significant degree of protection to which they were entitled, but also deprived the [wrongful death] plaintiffs of a means of definitively establishing

---

[8]At oral argument, Wismar conceded, for purposes of oral argument only, that a shift in the burden of proof would be proper on the issue of whether there was a seat-related defect in the car. However, Wismar contends the burden should remain with Galanek to prove such defect caused her countrecoup injury. We disagree. Under our burden-shifting analysis, the issue of whether there was a seat-related defect is inextricably intertwined with the issue of whether such defect caused Galanek's injury. Even if Wismar failed to meet his burden of proving the absence of a defect, Galanek would still be unable to prove the precise nature of the defect due to the loss of the car. Absent proof of the nature of the defect, it would be impossible for Galanek to prove the defect was a contributing cause of her injury. Hence, the burden-shifting resulting from Wismar's negligence in failing to preserve the car necessarily encompasses the issue of whether a defect in the car caused Galanek's injury.

the facts leading to the drownings." (*Id.* at p. 771.) Thus, *Haft* noted, the plaintiffs went as far as they could in proving causation by showing the defendants were negligent in failing to provide a lifeguard and that the available facts strongly suggested a competent lifeguard would have prevented the deaths. *Haft* concluded: "To require plaintiffs to establish 'proximate causation' to a greater certainty than they have in the instant case, would permit defendants to gain the advantage of the lack of proof inherent in the lifeguardless situation which they have created. [Citations.] Under these circumstances the burden of proof on the issue of causation should be shifted to defendants to absolve themselves if they can." (*Id.* at p. 772)

Similarly, to require Galanek to establish causation in the instant action would permit Wismar to take advantage of the lack of proof resulting from his own negligence. Wismar cannot be insulated from personal liability by the very act of professional negligence that subjects him to liability. A fundamental principle of our legal system is that "[n]o one can take advantage of his own wrong." (Civ. Code, § 3517.) Based on the facts stated in Galanek's opening statement, the burden of proof would properly shift to Wismar to prove his negligence did not cause Galanek to lose a meritorious case against Honda. Accordingly, the court erred in granting nonsuit on the opening statement on the ground Galanek lacked proof of facts necessary to establish causation in the instant action.[9]

## DISPOSITION

The order granting defendants' motion for nonsuit is reversed. Galanek shall recover her costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 24, 1999. Werdegar, J., was of the opinion that the petition should be granted.

---

[9]We emphasize that our burden-shifting analysis is based on the facts asserted in the opening statement upon which nonsuit was granted. We offer no opinion as to whether a shift in the burden of proof would actually be warranted based on the evidence admitted at trial.