Filed 3/27/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KIMBERLY MONTOYA et al., | |
| Petitioners, | |
| v. | G064459 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 30-2022-01239435) |
| Respondent; | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| AARON FOWLER et al. | |
| Real Parties in Interest. | |

It is ordered that the opinion filed herein on February 28, 2025, be modified as follows:

On page 2, delete the counsel listing for Petitioners and in its place insert the following:

Law Office of Jennifer R. Johnson, Jennifer R. Johnson and Susan D. Garbutt; The Spencer Law Firm, Mark J. Spencer; Steven B. Stevens Law Office and Steven B. Stevens for Petitioners.

There is no change in the judgment.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

Filed 2/28/25 (unmodified opinion) Certified for Publication 3/21/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KIMBERLY MONTOYA et al., | |
| Petitioners, | G064459 |
| v. | (Super. Ct. No. 30-2022-01239435) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| AARON FOWLER et al., | |
| Real Parties in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Scott A. Steiner, Judge. Writ issued.

Law Office of Jennifer R. Johnson and Jennifer R. Johnson; The Spencer Law Firm and Mark J. Spencer for Petitioner.

No appearance by Respondent.

Cole Pedroza, Kenneth R. Pedroza, and Matthew S. Levinson; Schmid & Voiles, Margaret Cahill, and Khuong T. Do for Real Parties in Interest.

\*          \*          \*

This petition for writ of mandate involves a claim of medical malpractice by Kimberly Montoya against Dr. Aaron Fowler. Montoya claims Dr. Fowler committed malpractice when he was treating Montoya in a hospital, observed signs of potential stroke, which she was in fact experiencing, but he failed to call a "code stroke." As a result, a CT scan was not taken of her brain until several hours later, and she is presently severely disabled as a result of her stroke. Montoya claims her damages would have been significantly less severe had a code stroke been called immediately, which would have resulted in a CT scan that revealed the ongoing stroke, and which would have led doctors to perform a thrombectomy to mitigate the damage.

The question before us involves a request for a burden-shifting jury instruction. Montoya contends she cannot prove her damages with specificity because, in the absence of a timely CT scan, it is impossible to determine how much damage was done before a thrombectomy should have been performed, which would not be caused by Dr. Fowler's alleged negligence, as opposed to after, which would. At trial, Montoya requested a jury instruction shifting the burden of proof to Fowler to prove that his alleged negligence did *not* cause her damages. The trial court denied the instruction. Upon the filing of Montoya's writ petition, we issued a stay of the impending trial.

We will issue a writ of mandate instructing the court to vacate its ruling denying the requested jury instruction. If Montoya can present evidence (1) Fowler was negligent in failing to order a CT scan, (2) there is a reasonable possibility that a CT scan followed by a thrombectomy would have mitigated her damages, and (3) that a CT scan was critical to establish causation, then public policy requires that the burden shift to Dr. Fowler to show that his negligence did not cause her damages. Where the absence of critical evidence of causation is a direct result of a tortfeasor's negligence, the tortfeasor cannot be permitted to benefit from that negligence.

## PROCEDURAL HISTORY

In January 2022, Montoya and her husband filed a lawsuit against numerous defendants, including Dr. Fowler. The complaint alleged two causes of action: medical negligence and loss of consortium. Montoya alleged she had retained defendants to perform heart surgery on her, which took place on February 19, 2021. Following the surgery, Montoya suffered a stroke. Montoya alleged the defendants negligently treated her, resulting in them failing to diagnose and treat the stroke in a timely manner, resulting in damages.

The night after the surgery, the primary surgeon, Dr. Palafox, was informed that Montoya's symptoms were suggestive of a stroke. Dr. Palafox requested that Dr. Fowler visit Montoya the next morning. Dr. Fowler examined her at around 8:00 a.m. on February 20, 2021. He did not call a code stroke or order a CT scan. Montoya was finally diagnosed with a stroke at 6:35 p.m. that day. As a result of the stroke, she is "catastrophically disabled with severe receptive (inability to comprehend spoken or written language) and expressive aphasia (inability to speak), brain damage and profound right sided weakness in both her upper and lower extremities."

3

Prior to trial, the court granted a motion to bifurcate the trial into two phases: liability and damages.

Around the same time, Montoya filed a written motion requesting a special jury instruction that would shift the burden of proof on causation to Dr. Fowler. The proposed instruction stated: "If you find Plaintiffs have proven that any or all of the Defendants AARON FOWLER, M.D. and/or AARON FOWLER, M.D., INC., were negligent in failing to order a CT Scan of Plaintiff KIMBERLY MONTOYA's brain/head, and that such negligence makes it impossible for Plaintiffs to prove Defendant's negligence proximately caused her damages, then the burden of proof as to the element of causation shifts to the Defendant(s) to prove their negligence did not cause the Plaintiffs' damages."

As part of her motion, Montoya submitted deposition excerpts from her expert witness as well as Dr. Fowler's expert witness.

According to Montoya's expert's deposition testimony, there is a high degree of medical certainty that, if she had been given a CT scan that morning, and if the image had shown she was a candidate for a thrombectomy (which it likely would have), she would have obtained a better outcome in terms of long-term damage. To what extent she would have been better is unknowable.

Dr. Fowler's expert took the position during a deposition that because there was no imaging done that morning when Dr. Fowler examined her, there is no way to know whether, at that time, she was a candidate for a thrombectomy at all. Montoya was no longer a candidate for a thrombectomy when an image was finally taken because the stroke had advanced too far.

The court denied the requested instruction. The court reasoned that "[t]he one common theme that I seem to note in some of the . . . burden-

4

shifting cases, and there aren't many of them, was fault in the sense of an active express act." The court also expressed concern that if Dr. Fowler must bear the burden of proof as a result of his omission in performing a CT scan, every medical malpractice case involving an omission would require burden shifting. Ultimately, the court concluded, "the defense had the better argument about this not being an impossibility situation." "Long story short, it's apparent to me, just from – without having met anyone in this case, that your ability to establish extent of damages has not been seriously impaired by this ruling, at least what I'm gathering in terms of the plaintiff's condition."

After the court's ruling, Montoya filed the present petition for writ of mandate, requesting that we issue a writ requiring the court to give the jury instruction. We issued an order to show cause and stayed the trial proceedings below.

## DISCUSSION

"Generally, the burden falls on the plaintiff to establish causation." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968 (*Rutherford*).) But not always.

"In negligence and products liability cases, the doctrine has evolved that the burden of proof on the issue of causation may be shifted to the defendant where demanded by public policy considerations." (*Thomas v. Lusk* (1994) 27 Cal.App.4th 1709, 1717.) "[T]he shift of the burden of proof . . . may be said to rest on a policy judgment that when there is [1] a substantial probability that a defendant's negligence was a cause of an accident, and [2] when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove 'proximate causation' conclusively, it is more appropriate to hold the defendant liable than to deny an innocent plaintiff recovery,

5

unless the defendant can prove that his negligence was *not* a cause of the injury." (*Haft v. Lone Palm Hotel* (1970) 3 Cal.3d 756, 774, fn. 19 (*Haft*).)

Two cases illustrate this principle.

In *Haft,* a surviving spouse brought a wrongful death suit against a hotel due to the drowning deaths of her husband and son. No one witnessed the actual drownings. (*Haft, supra,* 3 Cal.3d at p. 762.) The hotel was under a statutory duty to provide a lifeguard, which it did not do. (*Id.* at pp. 762-763.) This rendered the hotel "unquestionably negligent as a matter of law." (*Id.* at p. 763.) At trial, the hotel argued that plaintiffs had failed to carry their burden of proving causation, and a jury ultimately agreed with the hotel. (*Id.* at p. 764.) However, our high court reversed. It held that once plaintiffs proved the hotel failed to provide a lifeguard, "the burden shifted to defendants to show the absence of a lifeguard did not cause the deaths." (*Id.* at p. 765.) "The troublesome problems concerning the causation issue in the instant case of course arise out of the total lack of direct evidence as to the precise manner in which the drownings occurred. Although the paucity of evidence on causation is normally one of the burdens that must be shouldered by a plaintiff in proving his case, the evidentiary void in the instant action results primarily from defendants' failure to provide a lifeguard to observe occurrences within the pool area. The main purpose of the lifeguard requirement is undoubtedly to aid those in danger, but an attentive guard does serve the subsidiary function of witnessing those accidents that do occur. The absence of such a lifeguard in the instant case thus not only stripped decedents of a significant degree of protection to which they were entitled, but also deprived the present plaintiffs of a means of definitively establishing the facts leading to the drownings." (*Id.* at p. 771.) "[T]he absence of definite

6

evidence on causation is a direct and foreseeable result of the defendants' negligent failure to provide a lifeguard." (*Id.* at p. 773.)

In support of its conclusion, the *Haft* court noted that "the judiciary has responded to the uncertainties of proof inherent in a variety of parallel situations by shifting the burden of proof to a clearly negligent party." The first example the court gave is particularly apropos here: "when a plaintiff's injuries result from a combination of a tortfeasor's negligence and an innocent cause but the injuries are not readily susceptible to allocation between the two, our courts have required the negligent party to bear the burden of proving the extent of the damages resulting from his conduct [Citations]; if he cannot sustain that burden, he is held liable for the entire loss." (*Haft*, *supra,* 3 Cal.3d at p. 774.)

The second case illustrating this principle is *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417 (*Galanek*). *Galanek* was a legal malpractice suit arising from the attorney's representation of the plaintiff in an underlying product liability suit against a car manufacturer. (*Id.* at p. 1420.) Plaintiff had been involved in a car accident and intended to assert that the front seat was defective. (*Id.* at p. 1421.) However, plaintiff's attorney failed to ensure that the vehicle itself was preserved. As a result, a court entered summary judgment against plaintiff in the product liability suit. (*Id.* at p. 1423.) In the subsequent malpractice suit, the attorney argued the plaintiff could not establish that the malpractice caused harm because she could not establish that the underlying product liability suit was meritorious (the case-within-a-case). And she could not establish the underlying suit was meritorious because there was no vehicle to inspect. (*Ibid.*) The trial court granted a nonsuit in favor of the attorney after the opening statements, and the plaintiff appealed. (*Id.* at p. 1420.)

7

The *Galanek* court reversed, concluding that the plaintiff "asserted sufficient facts in her opening statement to shift the burden of proof on causation to [the attorney]." (*Galanek, supra,* 68 Cal.App.4th at p. 1425.) The court reasoned, "[T]o require [the attorney] to establish causation in the instant action would permit [the attorney] to take advantage of the lack of proof resulting from his own negligence. [The attorney] cannot be insulated from personal liability by the very act of professional negligence that subjects him to liability. A fundamental principle of our legal system is that '[n]o one can take advantage of his own wrong.'" (*Id.* at p. 1428.)

Montoya's theory of the case is that Dr. Fowler was negligent in failing to order a CT scan, a CT scan would have revealed an ongoing stroke at a time when a thrombectomy was possible, and a thrombectomy would have substantially improved Montoya's outcome. To what extent it would have improved her outcome, however, is unknowable absent a CT scan. If that theory is correct, it fits neatly in the burden-shifting scheme described above. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

In concluding that the burden-shifting doctrine does not apply here, the court relied primarily on two cases, *Rutherford, supra,* 16 Cal.4th 953, and *Thomas, supra,* 27 Cal.App.4th 1709. We find neither applies here.

In *Rutherford*, the issue was how to analyze causation in an asbestos-exposure case where the defendant was just one of many providers of asbestos products, and it was functionally impossible to determine whether, and to what extent, the plaintiff's lung cancer was actually caused by exposure to the defendant's specific product. The plaintiff sought to shift the burden of proving causation to the defendant under a doctrine called alternative liability. (*Rutherford, supra,* 16 Cal.4th at p. 969.) This doctrine arose in the case of *Summers v. Tice* (1948) 33 Cal.2d 80 where two hunters had negligently fired their shotguns toward the plaintiff, but only one had struck the plaintiff, and it was impossible to say which. The *Summers* court held the hunters were jointly and severally liable, which effectively shifted the burden to each of them to prove they were *not* the cause. In *Rutherford,* our high court refused to apply alternative liability. Because lung cancer from asbestos exposure is dependent on the aggregate amount of exposure a person has, the court held that the defendant could be held liable for the increased *risk* the defendant's product potentially exposed plaintiff to, even if the plaintiff could not prove which product actually triggered the cancer. Given this lightened burden, the court concluded "the difficulties of proof do not in general appear so severe as to justify a shift in the burden of proof." (*Id.* at p. 678.)

*Rutherford*, and the alternative liability doctrine it addressed, are inapplicable here because they address an issue not before us: how to assess causation when there are multiple culpable parties. At this point, we are concerned with the actions of only one person, and our concern is with an absence of critical evidence caused by defendant's negligence.[1]

*Thomas, supra,* 27 Cal.App.4th 1709, was, like *Galanek*, a legal malpractice case that had arisen from a botched product liability case. There, a hammer used in maintaining an aircraft had broken apart during use, injuring the plaintiff. (*Id.* at p. 1713.) Plaintiff sued the manufacturer of the hammer. The employer initially saved the broken hammer, but by the time plaintiff's attorney got around to asking for the hammer about a year after he was retained, it could no longer be located. (*Id.* at pp. 1713-1714.) After plaintiff lost the product liability suit, he sued his attorney for malpractice, and a jury found in favor of the client. The attorney appealed, claiming it was error to instruct the jury that the burden of proof had shifted to the attorney on the suit-within-a-suit issue of causation. (*Id.* at p. 1715.)

The *Thomas* court reversed, concluding a shifting of the burden was not appropriate. After discussing *Haft*, the *Thomas* court stated, "The essential principle underlying this narrow exception to the usual allocation of proof is that the burden of proving an element of a case is more appropriately borne by the party with greater access to information." (*Thomas, supra,* 27 Cal.App.4th at p. 1717.) Although the court acknowledged that the attorney was at fault for the spoliation of the evidence, and even allowed that "we

---

[1] We note that there are indications in the record that Montoya settled with other defendants, including Dr. Palafox, but no issues of apportionment between the various defendants have been raised here.

would not entirely foreclose shifting the burden of proof of causation in actions for legal malpractice," it "conclude[d] that the trial court erred in doing so under the particular facts presented in the case before" it. (*Id.* at p. 1718.) The court reasoned that "the lost evidence is no more available to appellant than respondent." (*Ibid.*) The court found that both parties—client and attorney—were at fault for not preserving the evidence. (*Ibid.*) And it found that the client had failed to make a prima facie case that the attorney's negligence caused the underlying case to be lost (though it recognized that such prima facie proof is difficult in the absence of the hammer). (*Id.* at p. 1719.) There was no prima facie evidence of a defect in the hammer, and identical hammers were available for inspection, together with the testimony of eyewitnesses. "Even when a shift in the burden of proof is appropriate, the plaintiff still must make at least a prima facie showing of causation." (*Id.* at p. 1720.)

We question some of the rationale in *Thomas*. In particular, we disagree that the "essential principle" in *Haft* was allocating the burden to the party with the best access to the evidence. In *Haft*, there was no evidence. Rather, the animating principle of that decision, and subsequently of *Galanek*, was that when critical evidence of causation does not exist, *and the defendant breached a duty to create or preserve that evidence*, defendant should bear the burden of rebutting a presumption of causation. The defendant should suffer the consequences of his own breach, not benefit from it. And in *Thomas*, it seems apparent to us that the attorney was far more at fault for failing to preserve the evidence than the client was. Clients should be able to implicitly trust that their attorneys will preserve essential evidence. But in any event, *Thomas* is readily distinguishable from the

11

present case. Montoya was unconscious and had no access to evidence of her condition. That evidence was entirely in Dr. Fowler's control.

In refusing Montoya's instruction, the trial court also expressed some policy-oriented concerns, in particular, that shifting the burden in a case such as this would open the floodgates to shifting the burden in every malpractice case involving an omission. We disagree.

What sets cases like *Haft, Galanek*, and the present case apart, is that the defendant breached a duty to create or preserve evidence. To illustrate the distinction, consider a hypothetical: suppose Dr. Fowler had ordered a CT scan, and the CT scan had indicated a stroke, but Dr. Fowler negligently failed to order a thrombectomy. In this example, despite a negligent omission, no burden shifting would be necessary because the evidence of causation (i.e., the CT scan) exists.

Additionally, the legal requirements for applying the burden shifting will limit the cases to which it applies. To shift the burden of proof, Montoya must demonstrate the following: (1) Dr. Fowler was negligent in not ordering a CT scan, (2) there is reason to believe the lack of a CT scan damaged Montoya (i.e., a prima facie case of causation), and (3) the CT scan was critical to proving causation with specificity. The requirement to make a prima facie case of causation, though it must be tempered by the fact that the defendant's breach caused an absence of evidence, will prevent parties from taking mere "shots in the dark." There must be *some plausible* reason to believe that the defendant's negligence caused plaintiff's harm. The third requirement, that the missing evidence be critical to proving causation, further serves to limit the cases to which burden shifting applies. In many instances, for example, the failure to perform a particular diagnostic test will

12

not critically impair a plaintiff's ability to prove causation because causation can be determined by other evidence.

The question then becomes how to apply these principles here. The procedural posture of this case, however, makes it difficult to go much further. Montoya requested the instruction before trial and before the court had heard any evidence. Although her theory of the case suggests it may ultimately be appropriate to give an instruction along the lines she requested, the factual record is currently insufficiently developed to make that determination at this stage.

When the trial court was initially presented with Montoya's request, it deferred ruling until after the presentation of evidence. The court was persuaded to revisit the issue and make a ruling because the parties needed to know the legal contours of the case in order to prepare for trial. Our goal is to provide the parties with the clarity they need on the applicable law while giving the court the leeway it needs to craft appropriate jury instructions in light of the evidence to be introduced at trial. To that end, we will order the court to vacate its ruling denying Montoya's requested instruction, but we will not order the court to approve any particular instruction at this time. That decision should be made by the court if and when the evidence is sufficiently developed at trial.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the court to vacate its ruling denying Montoya's request for Special Jury Instruction No. 1. Montoya shall recover her costs incurred in this proceeding.

SANCHEZ, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.

14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

KIMBERLY MONTOYA et al.,

    Petitioners,

        v.

THE SUPERIOR COURT OF
ORANGE COUNTY,

    Respondent;

AARON FOWLER, et al.

    Real Parties in Interest.

G064459

(Super. Ct. No. 30-2022-1239435)

O R D E R

       Petitioners and several others have requested that our opinion, filed on February 28, 2025, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED.

The opinion is ordered published in the Official Reports.


                              SANCHEZ, ACTING P. J.

WE CONCUR:



MOTOIKE, J.



GOODING, J.

2