Filed 1/11/22  Newnes v. Farmers and Merchants Trust etc. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CURT DANIEL NEWNES, | B303725 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. NC061713) |
| FARMERS AND MERCHANTS TRUST COMPANY OF LONG BEACH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Reversed with directions.

Curd, Galindo & Smith and Joseph D. Curd for Plaintiff and Appellant.

Law Offices of Michael Leight, Michael Leight and John Gloger for Defendant and Respondent.

———————————

This is an appeal from a nonsuit on punitive damages granted immediately after completion of plaintiff Curt Daniel Newnes's opening statement.

In his suit against defendant Farmers and Merchants Trust Company (Merchants Trust or the Company) for intentional and negligent interference with prospective economic advantage, Newnes claimed that Merchants Trust, a large financial institution primarily engaged in trust and estates management, illegally and repeatedly solicited the real estate management business of elderly Regena Cole, on whose behalf Newnes had successfully managed properties for 25 years.

Although the trial court concluded that the Company had engaged in wrongful conduct by operating without a real estate broker's license and unlawfully contracting with Cole, it nevertheless granted a nonsuit on the issue of punitive damages immediately after Newnes's opening statement, stating it "simply [did not] think this [was] a punitive damages case." The jury subsequently returned a special verdict finding that Merchants Trust had intentionally interfered with Newnes's economic relationship with Cole by engaging in wrongful conduct while knowing that its conduct was substantially certain to disrupt their business relationship, and it awarded Newnes significant compensatory damages.

Appellate courts have deemed it especially perilous for a trial court to grant a nonsuit after opening statement because this procedural device effectively takes the case away from the jury before any evidence is received. This case exemplifies the risk of removing a highly fact-intensive issue from the jury's consideration after a plaintiff has merely set forth a general roadmap of the evidence expected at trial.

Merchants Trust spent seven months soliciting Cole's business and responding to her queries about their ability to capably manage her large portfolio, even though it lacked legal authority to engage in real estate management services and had no significant experience doing so.  Whereas Merchants Trust claimed it had made an innocent mistake, the jury should have been allowed to decide whether the Company knowingly flouted the law or otherwise operated with the requisite mindset of malice.

Accordingly, we reverse the judgment of nonsuit and remand for a trial on Newnes's claim for punitive damages.

## PROCEDURAL HISTORY

### A.    The Complaint

Newnes filed a complaint against Merchants Trust, asserting six causes of action: (1) intentional interference with prospective economic advantage; (2) negligent interference with prospective economic advantage; (3) intentional interference with contractual relations; (4) violations of Business and Professions Code section 17200 et eq.; (5) restitution based on unjust enrichment; and (6) violation of the Financial Information Privacy Act (Fin. Code, § 4050 et seq.).

The complaint was based on allegations that Newnes managed Cole's properties from 1993 to March 2017, increasing her total equity from $5 million to $70 million, and that Merchants Trust unlawfully solicited this business away from Newnes.  Merchants Trust knew of Newnes relationship with Cole and acted illegally in soliciting Cole's business away from Newnes because it was not a duly licensed property management company, had no lawful ability to provide the services in question, and had no prior experience in the management of residential real property for third parties.  Merchants Trust's

3

conduct was additionally wrongful as to Cole because she was 89 years old at the time Merchants Trust sought her business, had named Merchants Trust as successor trustee to her trust, and was susceptible to their suggestions.

The complaint alleged that Newnes lost income of over $20,000 a month for all of his services, and suffered a past and future economic loss in excess of $5 million. Also alleging that Merchants Trust acted with malice, oppression, or fraud, Newnes claimed he was entitled to punitive damages according to proof at trial.

## B. The Trial and Nonsuit Motion

Newnes's claims for negligent and intentional interference with prospective economic advantage were tried to a jury.[1] His opening statement contended that Merchants Trust illegally competed against him in taking away the Cole account and, in the course of so doing, made misrepresentations and concealed material facts from Cole, particularly as to their experience and legal ability to operate as a property manager.

After Newnes completed his opening statement, Merchants Trust orally moved for nonsuit on his claim for punitive damages, arguing that there was nothing in Newnes's opening statement to show by clear and convincing evidence that the Company acted with malice, oppression, despicable conduct, or fraud. The

---

[1] Newnes voluntarily dismissed his claims for violation of the Financial Information Privacy Act and intentional interference with contractual relations. The court granted judgment in the Company's favor on the other two claims, explaining the type of equitable relief sought in these claims (restitution/unjust enrichment) was not available to a nonparty to the agreement between Merchants Trust and Cole. Newnes does not appeal this ruling.

4

Company asserted there was "nothing that anyone has demonstrated in the opening statement or on offers of proof that would demonstrate that [Merchants Trust] had any idea that it needed a license to do the type of work—a portion of the type of work it's doing for Ms. Cole."

Newnes countered that a large financial institution such as Merchants Trust could not "credibly claim" that they had no idea whether they needed to be licensed, and that "to engage in a business . . . without a license to do that, whether it's as [*sic*] unauthorized practice of law, what have you, is despicable." Newnes also argued Merchants Trust operated with "conscious disregard" since "everybody in business that is going out and doing business, they know what business they're in" and are "obligated to know the law."

The court responded by pointing out that Merchants Trust was "doing the work for a number of trusts that they're trustees for" and that it "just didn't hear anything that would amount to oppression, malice, or fraud" and "simply [did not] think this is a punitive damages case."

In response to Newnes's assertion that Merchants Trust failed to tell Cole that they were not licensed and that this was a "fraud" and "misrepresentation," the court stated "[m]aybe it's a fraud on Ms. Cole, but she's not complaining" and was "still doing business with them" at present. The court thus granted Merchants Trust's motion for nonsuit on the issue of punitive damages.

Later, the court instructed the jury that it had found, as a matter of law, that Merchants Trust had operated without a real

estate broker's license and could not lawfully enter into a contract for property management with Cole.[2]

On September 16, 2019, the jury returned a special verdict in favor of Newnes, finding that Merchants Trust intentionally interfered with the economic relationship between him and Cole by engaging in wrongful conduct and knowing that its conduct was certain or substantially certain to disrupt their business relationship. The jury awarded Newnes actual damages in the amount of $125,127.92.

On October 21, 2019, the trial court entered judgment on the jury's special verdict.

## C. The New Trial Motion

On November 5, 2019, Newnes moved for a new trial on the issue of punitive damages, arguing the trial court erred in granting nonsuit on the issue.

On January 2, 2020, the trial court denied the motion, observing that the evidence showed Merchants Trust "had done this type of work before in a slightly different capacity, that is as a trustee which they were legally allowed to do" and that in this case "they just messed up."

Newnes pointed out that he could have shown that Merchants Trust knew it needed a license, rather than just

---

[2] The court instructed the jury as follows: "The [c]ourt has determined that [Merchants Trust] was not legally capable of entering into an agreement which included the leasing and advertising of property, listing property for rent, or collecting rents without a real estate broker's license, and [it] did not have a real estate broker's license when it entered into the Property Management Agreement with REGENA COLE (Exhibit 84). You are to determine if [Merchants Trust] entered into the agreement with REGENA COLE."

6

"mess[ing] up" since it submitted Cole's properties to listing agencies and told them it had a license and told Cole that Merchants Trust could do these services for her, when they could not legally do so.

The court acknowledged "[t]hey should have—they should have made sure that they could do it in the capacity that they were in" but that the case "struck" the court "as a very, very far cry from malice, oppression or fraud."

On January 15, 2020, Newnes filed a notice of appeal from the final judgment and the trial court's order denying his motion for new trial.[3]

## DISCUSSION

### A.    Standard of Review

After the plaintiff's opening statement, a defendant may move for nonsuit as to "some . . . of the issues involved in the action" on the grounds the facts stated to be proved are legally insufficient to constitute a claim, including damages. (Code Civ. Proc., § 581c, subd. (b); *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 58-59; *Jenson v. Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 965.)

"The standard of review for a nonsuit after [the] conclusion of the opening statement is well settled.  Both the trial court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference which may be drawn from those facts." (*Abeyta v. Superior Court* (1993) 17

---

[3] Newnes filed an amended notice of appeal on February 6, 2020, clarifying that he was solely appealing from that portion of the final judgment granting nonsuit on the issue of punitive damages after opening statement.

7

Cal.App.4th 1037, 1041.) We will not affirm the judgment of nonsuit " 'unless interpreting the evidence most favorably to [the] plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.' " (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839.)

Where punitive damages are involved, the court reviewing a motion for nonsuit must evaluate the claim " 'with that higher [clear and convincing evidentiary] burden in mind.' " (*Hoch v. Allied-Signal, Inc., supra,* 24 Cal.App.4th at p. 59.) However, nonsuit is proper only when "no reasonable jury" could make a finding of malice, fraud, or oppression. (*Id.* at pp. 60-61.)

We review a nonsuit de novo. (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1060.)

## B. The Trial Court Erred in Granting Nonsuit After Newnes's Opening Statement

In his opening statement, Newnes's counsel told the jury that Cole, a 90-year-old widow, had a good working relationship with him, and that he had consistently increased Cole's profits on an annual basis. Both Newnes and Cole banked with Merchants Trust and Cole had already named Merchants Trust as her successor trustee in the event of her death.

While driving with her caretaker, and after noticing Merchants Trust's signage and office building in June of 2016, Cole spoke to Jeffrey Hahn, senior vice president, and asked about the nature of Merchants Trust's business. Hahn explained that Merchants Trust manages its clients' trusts, which sometimes includes managing real estate properties. Cole left that meeting with no intention to transfer management services of her properties from Newnes to Merchants Trust.

8

Newnes's counsel further explained that, over the next seven months, representatives from Merchants Trust, including its president Daniel Walker and senior vice presidents Hahn and Shawn Miller, met with Cole at the Company's office and Cole's home to discuss the Company's ability to manage her properties. During these meetings, Cole told Merchants Trust that she already had a property manager and gave the Company Newnes's annual reports on the income generated by Cole's properties.

At no point during these meetings did Walker, Hahn, or Miller tell Cole that Merchants Trust had no license to perform current property management services for her, and could only do so as trustee upon her death.

Newnes's counsel said that Cole repeatedly asked whether Merchants Trust could successfully manage real property and what their capabilities were in this regard. At no point during these meetings did Walker, Hahn, or Miller explain to Cole that Merchants Trust managed only one single family home in a non-trustee capacity, as compared to Cole's 155 apartment units. Instead, Merchants Trust assured her that they were able to manage her properties in such a capacity.

On or around February 17, 2017, after being pursued by Merchants Trust for about seven months, Cole decided to change management services from Newnes to Merchants Trust.

Counsel for Newnes also told the jury that the loss of Cole's business to Merchants Trust caused Newnes to suffer a large financial loss because Cole was Newnes's largest client, making up about one-third of the total number of units he managed. He asked for an award to compensate Newnes for the loss of Cole's business to Merchants Trust as a result of unfair competition, and an award against Merchants Trust to discourage them from flouting the law.

Punitive damages are recoverable "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) " 'Malice,' " in turn, is defined as "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights . . . of others." (Civ. Code, § 3294, subd. (c)(1); *Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 63.)[4]

There is no specific recipe for identifying the circumstances under which punitive damages might be warranted. (See, e.g, *Ramona Manor Convalescent Hospital v. Care Enterprises* (1986) 177 Cal.App.3d 1120, 1132 [upholding award of punitive damages where the defendant "intentionally retained" possession of a nursing care facility (after expiration of its lease) knowing the owner "had entered into a relationship with someone [else] and knew that this prospective operator's contractual rights would be frustrated by [the defendant's] actions"].) As discussed in *Nolin v. National Convenience Stores, Inc.* (1979) 95 Cal.App.3d 279, "It must be recognized that a claim for punitive damages may arise in many varying factual contexts, as many as may be presented in the law of torts. Both [the] plaintiff and [the] defendant have argued their position here by dissecting the factual background of [appellate cases] in the hope of finding persuasive similarities. However, such efforts are not particularly productive; each case where punitive damages are claimed must be adjudged on

---

[4] Newnes argues that the trial court's grant of nonsuit was error in that he made a sufficient showing as to both malice and fraud. Because we conclude there was a sufficient showing of malice to defeat Merchants Trust's nonsuit motion, we need not address Newnes's fraud-related arguments.

individual merit, bearing in mind the general principles set forth in the decisional law . . . [¶] . . . [and] '[most] often [the malice] element is proven by circumstantial evidence alone.' [Citation.]" (*Id.* at pp. 287-288; see also *Campbell v. General Motors Corp*. (1982) 32 Cal.3d 112, 121 [" 'The mere fact that other inferences adverse to [the] plaintiff might be drawn does not render the inference favorable to [the] plaintiff too conjectural or speculative for consideration [by the jury]' "]; *Willis v. Gordon* (1978) 20 Cal.3d 629, 633 [" 'Whether a particular inference *can* be drawn from certain evidence is a question of law, but whether the inference *shall* be drawn, in any given case, is a question of fact' "].)

It can be especially problematic when the nonsuit is granted following the opening statement rather than at the completion of the plaintiff's evidence. As explained in *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1424, "Courts have traditionally taken a restrictive view of the circumstances under which a nonsuit at the close of an opening statement is appropriate because nonsuit at that point effectively takes the case away from the jury on a procedural device. [Citation.] Indeed, granting a nonsuit at the close of an opening statement is particularly dangerous because counsel rarely present such an explicit, full, and unabridged version of the plaintiff's case that the court can be sufficiently confident of the impossibility of proof of a cause of action to abruptly terminate the litigation. [Citation.] . . . [T]his court long ago cautioned against the precipitous grant of a nonsuit upon the conclusion of an opening statement, as the law favors trial on the merits. Simply stated, the grant of a nonsuit on an opening statement is clearly disfavored and should be avoided unless there is a clear and

11

unequivocal demonstration of a total lack of a cause of action by [the] plaintiff."

At trial's end, the court expressly instructed the jury on the intentional interference claim that Merchants Trust had engaged in "wrongful" conduct (by entering into a property management contract without a real estate broker's license), and the jury thereafter found in its special verdict form that Merchants Trust "kn[e]w that disruption of the relationship (between Newnes and Cole) was certain or substantially certain to occur," and that Merchants Trust's "wrongful conduct [was] a substantial factor in causing harm to [Newnes]." By itself, the jury's finding on intentional interference with prospective economic advantage went a considerable distance toward establishing that Merchants Trust acted with "malice," i.e., with a "willful and conscious disregard of the rights of" Newnes.

The trial court's instruction was supported by evidence establishing that Merchants Trust spent fully seven months soliciting Cole's lucrative business and responding to her queries about their ability to actively manage her large portfolio, even though it was managing only one unit as a non-trust property and did not have the necessary license for this line of business. [5]

The absence of a license was important evidence. It is unlawful for any person to engage in the business of or act as a

---

[5] Consistent with Newnes's opening statement, emails and notes were presented during trial to various executives of Merchants Trust who confirmed that Cole asked about the Company's ability to manage her properties, that Merchants Trust explained their "basic process as far as managing properties," and that the Company was seeking to explain to Cole how they were "different from other real estate management firms" in an effort to obtain her business.

real estate broker without first obtaining a real estate license from the Department of Real Estate. (Bus. & Prof. Code, § 10130.) Indeed, any person acting as a real estate broker or salesperson without being licensed is guilty of a criminal offense. (*Id.*, § 10139.) During trial, a Company executive acknowledged on cross-examination that Merchants Trust was a very large financial institution with a long history and access to information and advice from the Department of Business Oversight and various private law firms.

To establish the conscious disregard necessary for "malice," it was incumbent upon Newnes to adduce evidence that "the defendant was aware of the probable dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences." (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 895-896; *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1159.) At trial's end, the court instructed the jury, as a matter of law, that Merchants Trust was "not *legally capable* of entering into" the contract with Cole. (Italics added.) In reaffirming its nonsuit ruling at the motion for new trial, the trial court commented that "[Merchants Trust] should have—they should have made sure that they could do it in the capacity that they were in." The court's own observations come close to a finding that Merchants Trust operated with the requisite mindset.[6]

Based on the facts outlined in Newnes's opening statement, the jury could have reasonably inferred that the Company was

---

[6] However, proof that Merchants Trust intentionally interfered with Newnes's prospective economic advantage does not, ipso facto, demonstrate that the company was also aware of the unlawful nature of its "wrongful" act. (*Arntz Contracting Co. v. St Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 477).

13

aware of the illegal or unlawful nature of its conduct. Alternatively, it could have concluded that the Company's aggressive and extended pursuit of Cole's business, without any due diligence regarding its legal obligations, was itself evidence of "a willful and conscious disregard for the . . . rights" of Newnes. (Civ. Code, § 3294, subd. (c)(1); see also *Campbell v. General Motors Corp.*, *supra*, 32 Cal.3d at p. 121 [reversing a grant of nonsuit and stating, " '[i]t is not incumbent upon a plaintiff to show that an inference in his favor is the only one that may be reasonably drawn from the evidence; he need only show that the material fact to be proved may logically and reasonably be inferred from the circumstantial evidence"].)[7]

In addition to proof of a willful and conscious disregard for Newnes's rights, " 'malice' " also requires "[t]he additional component of 'despicable conduct.' " (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725.) " '[D]espicable' conduct" refers to "circumstances that are 'base,' 'vile,' or 'contemptible.' " (*Ibid.*)

---

[7] Merchants Trust also contends that Newnes's counsel "conceded" that the Company acted without malice during an in limine hearing, when counsel observed that Merchants Trust was "attempting to get the business" but "[did not] know that it was anything personal." An isolated statement in court colloquy is not a concession, let alone a concession that the Company lacked malice. (See *Ramona Manor Convalescent Hospital v. Care Enterprises*, *supra*, 177 Cal.App.3d at p. 1141 [to prove that a tort was maliciously perpetrated it is not necessary to establish an intent to injure the person wronged].) And, as noted above, the jury here found that Merchants Trust engaged in its wrongful conduct knowing that disruption of Newnes's relationship with Cole was certain or substantially certain to occur.

14

As we have said, Cole, a 90-year-old widow, had banked with Merchants Trust a long time and had named them as her successor trustee in the event of her death. One day, while in the car with her caregiver, she passed a building with a sign that stated "Farmers and Merchants Trust Department." She was curious because this building did not look like a bank, and ultimately went inside and spoke with the vice president. He told her they help people with their trusts and manage people's properties.

After this encounter, multiple meetings ensued over a seven-month stretch, wherein Cole was trying to ascertain whether Merchants Trust was capable of actively managing her 155-unit portfolio of rental properties. During that time, Merchants Trust's executives, including its president, met with Cole both at their offices and her home.

During each of these meetings Cole met alone with Company management, unaccompanied by any family member, friend, accountant, financial advisor, or legal representative. During this period, Merchants Trust reviewed detailed property management reports prepared by Newnes, showing his fees and the substantial income that the properties were generating for both Cole and Newnes's company.

Notwithstanding its lack of licensure and lack of experience with non-trust property management, Merchants Trust competed for Cole's business by representing itself as experienced and superior to Newnes and other licensed firms who actively manage non-trust properties and multi-family units.

Newnes is a small boutique property manager who only manages properties in Long Beach, within a mile or two of his office. Newnes earned fees for both managing Cole's units and for supervising capital improvements to the property. At that

time, he managed a total of 520 units, meaning that Merchants Trust's interference caused Newnes to lose a third of his business.

Indulging every legitimate inference in favor of Newnes, as we must (*Abeyta v. Superior Court, supra,* 17 Cal.App.4th at p. 1041), and resolving all presumptions and doubts in his favor, as we must (*Carson v. Facilities Development Co., supra,* 36 Cal.3d at p. 839), the jury could have found Merchants Trust's collective conduct so " 'contemptible . . . that it would be looked down upon and despised by ordinary decent people.' " (*Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 331.)

## C.    The Trial Court's Error Was Not Harmless

Merchants Trust argues any error in granting nonsuit was neither prejudicial nor subject to reversal. We disagree.

The jury awarded compensatory damages—"an absolute predicate" for a punitive damages award (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 147)—and it ultimately found an intentional tort had been committed. (Cf. *Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 106-107 [erroneous grant of nonsuit harmless where jury found in favor of the defendant with regards to the only conduct that could have given rise to liability for dismissed claims].) These and the other circumstances we have already discussed laid appropriate groundwork for punitive damages.

The testimony of Jeremy Clark, a junior Merchants Trust employee, merits particular attention. He acknowledged at trial that he used his personal license to perform duties for the Company. In its responding brief, Merchants Trust attempts to downplay its misfeasance, stating that Clark "may have used his license merely *as a convenience* to facilitate listings on local realty boards." (Italics added and omitted.) However, the court expressly found (and instructed the jury) that Merchants Trust

16

"was not legally capable of entering into an agreement which included the leasing and advertising of property, *listing property for rent*, or collecting rents *without a real estate broker's license*, and [Merchants Trust] did *not have a real estate broker's license*" (italics added) when it entered into the Cole agreement. The Company's use of a low-level employee's personal license is evidence from which the jury could have inferred that Merchants Trust *knew* it needed its own license to operate. Thus, by using Clark's license rather than obtaining its own requisite corporate license, the jury could have found that Merchants Trust knowingly flouted the law.[8]

And as we have noted, various emails and notes were presented to Merchants Trust executives at trial, who confirmed that Cole asked about Merchants Trust's ability to manage her properties, that Merchants Trust explained its "basic process as far as managing properties, multi-family units," and that Merchants Trust was seeking to explain to Cole how it was

---

[8] Newnes's trial brief, as well as his separate in limine motion, successfully urged the court to preclude Merchants Trust from telling the jury it was entitled to perform property management services through the personal license of a junior employee. Newnes included documentation showing that Merchants Trust used Clark's license to list Cole's property and that the license issued to Clark—and his associated license history—clearly established that his license had *no* corporate affiliation whatsoever. These documents were also included in the parties' joint exhibit list. Based on the evidence, the court found that Merchants Trust lacked the requisite license, and ability, to enter into a business agreement with Cole.

"different from other real estate management firms" in an effort to lure away her business.[9]

We disagree with the evaluation of Merchants Trust's conduct as mere "puffery," a "sales pitc[h]," by "singing the praises of its property management capabilities" without any thought of Newnes and with no knowledge it needed a real estate license. Although this is one conceivable hypothesis (and was, after all, Merchants Trust's theory of the case), we are supposed to indulge every legitimate inference in Newnes's favor because "the grant of a nonsuit on an opening statement is clearly disfavored and should be avoided unless there is a clear and unequivocal demonstration of a total lack of a cause of action by [the] plaintiff." (*Galanek v. Wismar*, *supra*, 68 Cal.App.4th at p. 1424.)

Indulging reasonable inferences, the jury also *could have* found there to be a significant difference between managing real estate for others *as a broker* (which Newnes successfully did on a large scale for his entire career) and stepping into the shoes as a *decedent's trustee of someone who owns a home* (which Merchants Trust did 99 percent of the time).

The jury *could have* concluded that Merchants Trust had precious little experience managing commercial properties and was therefore unfamiliar with the "rules of the road" governing licensed real estate brokers and commercial real estate operations, including federal, state, and local ordinances involving safety.

---

[9] Merchants Trust cannot rely on Evidence Code section 354 to avoid reversal because, even if applicable, "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer or proof, or by any other means." (Evid. Code, § 354, subd. (a).)

18

And the jury *could have* concluded Merchants Trust knew it was violating the law and injuring Newnes in the process. Indeed, jurors assessing the Company's characterizations of its actions as mere "puffery" or legitimate sales tactics could, in contradistinction, have found such characterizations to be despicable and conniving distortions of the truth, employed for the specific purpose of unlawfully capturing Newnes's lucrative client account of nonagenarian Cole. The jury as the finder of fact was not required to accept the bare denials proffered by Company executives.[10]

The trial court's ruling after opening statement invaded the jury's exclusive province as factfinder and unduly circumscribed the evidence that plaintiff's counsel was able to introduce at trial. (*Carson v. Facilities Development Co.*, *supra*, 36 Cal.3d at p. 851

---

[10] Newnes has been faulted for his failure to provide *enough* "circumstantial evidence of [Merchants Trust's] actual knowledge." But any failure to do so was a result of the trial court's premature ruling, which had the effect of *allowing* Merchants Trust to *deny* knowledge of its wrongful conduct without affording Newnes an adequate opportunity to offer countervailing or rebuttal evidence. As discussed in *Nolin v. National Convenience Stores, Inc.*, *supra*, 95 Cal.App.3d at page 288, " '[most] often [the malice] element is proven by circumstantial evidence alone,' " which, as we often see in the context of summary rulings, would otherwise present insurmountable evidentiary challenges. (See, e.g., *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 286 [issues of intent and motive are "rarely appropriate for disposition on summary judgment"]; see also *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d. 773, 785 [participation and knowledge in fraudulent scheme may be inferred from the actions and relations of the parties]; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 895 [same].)

[grant of nonsuit reversible error where evidence would have allowed jury to make favorable inferences from the plaintiff's evidence]; see also *Abeyta v. Superior Court*, *supra*, 17 Cal.App.4th at p. 1046 [granting writ relief on erroneous grant of nonsuit after opening argument].)  Indeed, our disagreement is evidence of the importance of a jury determination.  (*Hoch v. Allied-Signal, Inc.*, *supra*, 24 Cal.App.4th at p. 58 ["Where reasonable minds could differ as to whether the evidence would support punitive damages, the resolution of the conflicting inferences and the weighing of opposing evidence is for the jury; for the court to grant a nonsuit in that circumstance, or the appellate court to affirm a judgment of nonsuit, would be to usurp the jury's function"].)

Accordingly, we reverse the portion of the judgment that granted nonsuit and remand the matter for a new trial limited to the issue of punitive damages.  (See *Barmas, Inc. v. Superior Court* (2001) 92 Cal.App.4th 372, 376-377 [appellate courts retain authority to order partial retrials limited to punitive damages and such retrial may proceed in front of different jury than that which decided tort liability or separate issues].)

## DISPOSITION

The portion of the trial court's judgment granting nonsuit on the issue of punitive damages is reversed, and the matter is remanded for partial retrial limited to Newnes's claim for punitive damages.  Newnes shall recover his costs on appeal.

NOT TO BE PUBLISHED

CRANDALL, J.*

I concur:

CHANEY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

ROTHSCHILD, P. J., Dissenting

A reasonable jury could not have found the requisite "fraud" or "malice" to support punitive damages based on the evidence Curt Daniel Newnes described in his opening statement (see Civ. Code, § 3294, subd. (a)), even "indulg[ing] every legitimate inference which may be drawn from" that evidence. (*Abeyta v. Superior Court* (1993) 17 Cal.App.4th 1037, 1041.) Nor does the evidence Newnes subsequently identified to the trial court in his new trial motion (and to this court on appeal) support either fraud or malice. Accordingly, and for reasons I discuss in more detail below, I disagree with the majority and would affirm the judgment of nonsuit as to Newnes's punitive damages claim.

## A. Fraud

For the purposes of a punitive damages claim, " '[f]raud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).) The plain language of the statute thus appears to contemplate the possibility of punitive damages based on fraudulent conduct that injuriously deprives someone other than the plaintiff ("a person") of property or a legal right. (*Ibid.*; see *Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 999 [fraud on a third party that "directly enabled" the defendant to harm the plaintiff could provide basis for punitive damages].) Newnes argues that a jury could have reasonably found that Farmers and Merchants Trust Company (Merchants Trust) intentionally withheld from Regena Cole the material fact, known to Merchants Trust, that in order to manage Cole's property in any capacity other than that of a trustee, Merchants Trust needed a

license it did not possess. Crucial to establishing fraud on this theory is that a reasonable jury could find Merchants Trust knew it needed such a license.

In opposing the motion for nonsuit below, Newnes identified no facts based on which a reasonable jury could have concluded that Merchants Trust knew it needed a license. Rather, Newnes argued that Merchants Trust, as "a large financial institution[,] [could not] credibly claim they have no idea one way or the other whether they are or should be licensed." But evidence that Merchants Trust is a large financial institution working with trusts and estates could only support a finding that Merchants Trust should have known it needed a license—not a finding that Merchants Trust actually did know.[1] "Should know" is insufficient to support a punitive damages claim, because a negligent misrepresentation does not establish the "fraud" required by Civil Code section 3294. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1241 ["Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations."]; *Branch v. Homefed Bank* (1992) 6 Cal.App.4th 793, 799 [no punitive damages recoverable for negligent misrepresentation]; see also § 3294, subd. (c)(3) [referring to a "fact known to the defendant" to describe fraud].)

Newnes's punitive damages claim fares no better if we consider the sources of evidence Newnes identified after the

---

[1] It is conceivable that, under different circumstances, evidence suggesting a defendant should have known something might be so strong as to provide circumstantial evidence of actual knowledge. A showing only that the defendant is a large institution, however, does not present such circumstances.

motion for nonsuit was granted.[2]  In support of Newnes's motion for new trial on the issue of damages, Newnes represented to the trial court that he could offer "evidence that [Merchants Trust] had paperwork filled out that [it] submitted to listing agencies telling [the listing agencies] that [Merchants Trust] had a license."  On appeal, Newnes identifies this evidence more specifically as "[p]roposed trial exhibits 36 and 129," which, according to Newnes, "would have shown that [Merchants Trust] actually used [a Merchants Trust employee's] license with the local [real estate] listing service to support its listings of various managed properties for rental" and that Merchants Trust "also required [that employee] to submit an application telling the local listing service that he was [Merchants Trust's] broker of record" when in fact he was not.  Newnes argues that "[t]his is evidence from which a reasonable jury can conclude that [Merchants Trust] must have known [it] needed a license, since [it was] telling the local listing service [it] had one in order to list [its] properties."

Newnes's argument mischaracterizes the evidence.  None of these documents reflect that Merchants Trust represented it had a license or asked its employee to represent that the employee's license belonged to Merchants Trust.  To the contrary, in these documents, the license number of the employee is listed as belonging to that employee only, whereas the space for any license held by Merchants Trust is left blank.  The documents

_____

[2] The parties dispute whether and to what extent Newnes, in challenging the court's ruling on the nonsuit motion, may rely on evidence or facts Newnes did not identify either in his opening statement or in opposing the nonsuit motion.  But even considering these additional proffers, the evidence could not support punitive damages.

further reflect that Merchants Trust at one point changed its "broker/designated realtor" with the Pacific West Association of Realtors from one licensed Merchants Trust employee to another (Jeremy Clark), and in doing so, listed the license number of each broker as associated with that particular individual only. A reasonable jury could not infer from these documents that Merchants Trust knew it needed a license. To the contrary, these documents show Merchants Trust clearly indicated that it, as an organization, did not possess a real estate license, and was nevertheless able to list property for rental. Finally, and more broadly, the fact that Merchants Trust knew one needs to be a licensed realtor in order to list property on a platform for realtors does not support any reasonable inferences about the licensing needs for property managers generally. Thus, this evidence— even assuming we could properly consider it, despite Newnes not having identified it to the court in opposing the nonsuit—is not a basis on which a reasonable jury could find that Merchants Trust knew it needed a license to manage property.

We disagree with the majority's view that testimony establishing Merchants Trust employee Clark used his real estate license solely as part of his duties for Merchants Trust could permit a reasonable jury to find Merchants Trust knew it needed a license to manage property. Absent additional evidence—which Newnes has not claimed he could offer— establishing that anyone at the company asked Clark to use his license as the company's license, or to represent that it belonged to the company, Clark's testimony cannot provide a basis on which a reasonable jury could infer anything about the company's knowledge of licensure requirements. And, as discussed above, the documentary evidence in the record reflects that Clark

4

indicated when using his license for the company business that it belonged solely to him, not to Merchants Trust.

We further disagree with the majority that the challenged ruling prevented Newnes from offering evidence he otherwise could have to support a finding of the requisite knowledge. First, following that ruling, Newnes was given two opportunities—one below and one on appeal—to identify the type of additional evidence he would offer, were he permitted to try his punitive damages claim. For the reasons I have discussed, nothing he identified could support a finding that the company knew it needed a license. Consistent with this, the examples the majority provided of the trial court sustaining objections involved evidence that would not help support a finding that Merchants Trust knew it needed a license.[3]

Because nothing in Newnes' opening statement or subsequent proffers supports a finding that Merchants Trust knew it needed a license,[4] Merchants Trust's failure to tell Cole it

---

[3] Specifically, the majority identified objections to evidence that the company lacked another type of license (city business license) and that the company had "access to whatever lawyers or advice you would ever want to get." The company's lack of a city license, like its lack of a real estate license, does not establish knowledge of licensure requirements. And the fact that the company had legal counsel and could have inquired about licensure requirements can at best support a finding about what the company should have known—not what it actually did know.

[4] Newnes also contends that Merchants Trust having argued to the trial court in the context of motions in limine that it possessed a license to manage property somehow provides the requisite evidence of its knowledge that it needed such a license. A motion in limine is not evidence. Nor is Merchants Trust's

did not have a license cannot constitute concealment of a "fact known to [Merchants Trust]" and cannot support punitive damages. (Civ. Code, § 3294, subd. (c)(3).)

## B. Malice

Newnes also argues that he has identified sufficient evidence, based on which a jury could find Merchants Trust acted with the "malice" necessary for punitive damages. In this context, Newnes argues such conduct includes not only Merchants Trust's misrepresentations about its licensure (discussed above), but also that Merchants Trust misrepresented itself to Cole as having extensive property management experience, when in fact it had almost no such experience outside the context of handling property as a trustee. The definition of "malice" in the punitive damages statute contemplates two types of malicious conduct, the first of which is "conduct which is intended by the defendant to cause injury to the plaintiff." (Civ. Code, § 3294, subd. (c)(1).) Merchants Trust singing the praises of its property management capabilities—even if in a manner that was exaggerated, inaccurate, or not forthcoming—was part of an effort to win Cole's business, not an effort to "cause injury to [Newnes]." (*Ibid.*) None of the conduct Newnes describes suggests Merchants Trust was even thinking about Newnes, let alone seeking to harm him, when it crafted and delivered its sales pitches to Cole. Of course, the jury found that Merchants Trust's efforts to win Cole's business ultimately did harm Newnes, and that Merchants Trust knew such harm "was certain or

---

approach in pretrial proceedings to the issue of whether it *possessed* the requisite licensure to manage property tantamount to an admission of *knowledge regarding the need* for any such licensure years earlier.

substantially certain to occur" if its efforts were successful. But knowing a particular harm can result from intentional conduct is not the same as intending the harm. Concluding otherwise would conflate intentional tort liability with punitive damages liability.

The second type of malicious conduct that can support punitive damages is "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," (not necessarily the plaintiff). (Civ. Code, § 3294, subd. (c)(1).) " 'Despicable conduct' is conduct that is ' "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by [most] ordinary decent people." ' [Citation.]" (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1159.) A jury simply could not reasonably find that puffery regarding one's experience managing property or misrepresentations about one's licensure to manage property— even to an elderly widow—is so "vile" that it " 'has the character of outrage frequently associated with crime.' "[5] (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894.) In concluding

---

[5] In reaching a contrary conclusion, the majority relies on Merchants Trust having virtually no experience managing property except as a trustee, and on how different property management experience is when one gains that experience as a trustee, as opposed to as a non-trustee property manager. But this logic is inconsistent with the majority's view that the company must have been aware of the licensure requirements for the latter type of property management. If Merchants Trust had so little experience with and knowledge of non-trustee property management that the company's representations to the contrary were *despicable*, the company cannot also be charged with knowledge of the licensure requirements for such non-trustee property management.

otherwise, the majority relies in part on Cole's age, the fact that Merchants Trust had a pre-existing relationship of trust with Cole, and that it aggressively pursued her property management business for several months. Underlying this reasoning is the idea that Merchants Trust was taking advantage of Cole by misrepresenting its property management experience and licensure, and that this raises Merchants Trust's actions to the level of "despicable" conduct. But it does not follow that Cole was taken advantage of simply because she was an "elderly widow." Nor do the details about Cole's interactions with Merchants Trust support this. Cole herself initially approached Merchants Trust to inquire about its ability to manage her property before her death, not the other way around. She did so on the very logical basis that Merchants Trust managing her properties might be efficient, given that Merchants Trust would be managing those properties after her death. She was not immediately or easily persuaded to give Merchants Trust her business. Rather, she was savvy enough to press Merchants Trust employees for months with questions about its property management capabilities, and to have her lawyers review the contract with Merchants Trust before signing it. And, at the time of trial, she stood by her decision to have Merchants Trust manage her property. These circumstances cannot support a reasonable finding that Merchants Trust's conduct towards Cole was so abhorrent as to be deemed "despicable" for the purposes of punitive damages.

The majority also notes that Merchants Trust knew Cole's account represented a significant portion of Newnes's business, and thus that losing this business would have a significant impact on him. But Merchants Trust's tactics are not more

8

"despicable" because they caused a small competitor, as opposed to a larger competitor, to lose business.

Thus, the conduct Newnes identifies as a basis for punitive damages could not support a reasonable finding of "malice" under Civil Code section 3294.

For the foregoing reasons, I respectfully disagree with the majority's conclusion that the trial court erred in granting Merchants Trust's motion for nonsuit on the punitive damages claim. No reasonable jury could have properly awarded punitive damages. I would therefore affirm the trial court's judgment.

ROTHSCHILD, P. J.